# In the
# United States Court of Appeals
# For the Second Circuit

August Term 2023

No. 21-1381

AMERICAN GIRL, LLC,

*Plaintiff-Appellant,*

*v.*

ZEMBRKA, DBA www.zembrka.com, www.daibh-idh.com; www.zembrka.com; www.daibh-idh.com

*Defendants-Appellees.*\*

Appeal from the United States District Court
for the Southern District of New York
No. 21-cv-2372, Mary Kay Vyskocil, District Judge, Presiding.

(Argued May 10, 2024; Decided September 17, 2024)

Before: CABRANES, PARKER, and KAHN, *Circuit Judges.*

American Girl, LLC sued Zembrka, www.zembrka.com, and www.daibh-idh.com ("Zembrka") in the United States District Court for the Southern District of New York, asserting counterfeiting and trademark infringement claims.

---

\* The Clerk of Court is directed to amend the official caption as set forth above.

Zembrka, located in the People's Republic of China, moved to dismiss the complaint for lack of personal jurisdiction. *See* N.Y. C.P.L.R. § 302. The District Court (Vyskocil, *J.*) granted the motion, relying heavily on the fact that there was no evidence that Zembrka shipped the allegedly counterfeit products to New York and, consequently, the transacting business prong of § 302(a)(1) had not been satisfied. We conclude that American Girl adequately demonstrated that Zembrka transacted business in New York as required to establish personal jurisdiction under § 302 (a)(1). Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion.

KERRY BRENAE BROWNLEE (Jason M. Drangel, Ashly E. Sands, *on the brief*), Epstein Drangel LLP, New York, NY, *for* Plaintiff-Appellant

RUOTING MEN (Tao Liu, Tianyu Ju, *on the brief*), Glacier Law LLP, New York, NY, *for* Defendants-Appellees

BARRINGTON D. PARKER, JR., *Circuit Judge*:

Plaintiff-Appellant American Girl, LLC ("American Girl"), is a well-known manufacturer of dolls, doll books, and doll accessories. Defendants-Appellees Zembrka, www.zembrka.com, and www.daibh-idh.com ("Zembrka"), are located in, and operate from, the People's Republic of China. American Girl sued Zembrka in the Southern District of New York, alleging that through their interactive websites, they sold, in New York, counterfeit and infringing versions

of American Girl products and prominently used American Girl marks on their websites.[1]

Jurisdiction was predicated on two provisions of New York's long arm statute: C.P.L.R. § 302(a)(1) and (3)(ii). Zembrka moved to dismiss the complaint for, among other things, lack of personal jurisdiction. The District Court (Vyskocil, *J*.) granted the motion, emphasizing that American Girl had failed to establish that Zembrka shipped the merchandise at issue to New York. *Am. Girl, LLC v. Zembrka*, No. 1:21-CV-02372 (MKV), 2021 WL 1699928, at *5 (S.D.N.Y. Apr. 28, 2021) (hereinafter "*Zembrka I*"). Because we conclude that American Girl established jurisdiction under C.P.L.R. § 302(a)(1), we reverse.

## BACKGROUND

American Girl commenced this action in March 2021, asserting multiple claims under the Lanham Act, including claims for trademark counterfeiting and trademark infringement. American Girl's complaint contained the following comparison of its dolls and of dolls advertised on Zembrka's websites:

---

[1] American Girl is incorporated in Delaware and has its principal place of business in California. Its flagship store is located in New York.

| Counterfeit Product Image on Defendants' Website www.zembrka.com | Counterfeit Product Image on Defendants' Website www.daibh-idh.com | Image of Plaintiff's Authentic American Girl Product |
|---|---|---|
| | | |
| | | |
| | | |

At the time it filed its complaint, American Girl applied for and was subsequently granted a temporary restraining order, which enjoined Zembrka from marketing, manufacturing, or distributing counterfeit American Girl products or from advertising counterfeit or confusingly similar American Girl marks.

As noted, jurisdiction was predicated on C.P.L.R. §§ 302(a)(1) and (a)(3)(ii). J. App'x 11-12. Section 302(a) provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . .
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he . . .
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

N.Y. C.P.L.R. § 302(a).

Eventually, Zembrka appeared and moved to dissolve the TRO and dismiss the complaint for lack of personal jurisdiction on, among other reasons, the ground that they did not transact or do business in New York as required to establish personal jurisdiction under § 302(a)(1).[2]

---

[2] At oral argument before the District Court, counsel for Defendants also contended that, "I think, to my understanding—but again, that has to be confirmed with each defendant—the current policy is that no products are offered for sale to the United States." J. App'x at 281:18-21. He also stated that, in line with this purported policy, any money paid by customers in the United

5

In support of personal jurisdiction, American Girl asserted with supporting evidence that Zembrka maintained interactive websites through which customers, including those located in New York, could place orders by inputting their billing and payment information, shipping addresses, and contact information, and that customers were then sent confirmations of their orders. As further support, American Girl represented, with supporting evidence, that on March 11, 2021, its counsel purchased and paid for allegedly counterfeit American Girl merchandise on a Zembrka website and received confirmation emails from Zembrka stating "Order confirmed" and "We're getting your order ready to be dispatched. We will notify you when it has been shipped." J. App'x 83, 87. These confirmation emails included shipping addresses in New York. They were also accompanied by simultaneous emails from PayPal with receipts for the orders, which listed New York addresses for shipment of Defendants' products.

---

States is refunded. *Id.* at 281:25-282:1. Just moments earlier, however, in response to the question, "Do you offer them [the allegedly counterfeit American Girl dolls] on your website to people in the United States?" Zembrka's counsel responded, "That product is offered for sale on the website, yes, and that can be purchased from the people from New York, from the United States, yes." *Id.* at 282:1-5.

On March 26, the TRO was served on Zembrka. On April 10, 2021, nearly a month after the orders were placed and two weeks after Defendants were served, Zembrka, presumably alerted to this litigation, canceled the orders, refunded the payments, and reneged on their promises to ship the merchandise.

The District Court granted the motion to dismiss, relying heavily on the fact that American Girl did not provide evidence that the allegedly counterfeit goods had actually shipped to New York. The District Court reasoned that because no goods were shipped to New York and refunds were made, no business was transacted under § 302(a)(1).

After the motion to dismiss was granted, American Girl moved for reconsideration, largely based on newly discovered evidence. In support of the motion, American Girl submitted evidence that it had obtained after the District Court's decision showing that in March 2021, 38 other New York customers purchased allegedly counterfeit American Girl products from Zembrka's websites. None of these customers appeared to receive Zembrka's products and all were refunded the amounts they spent, but the vast majority of refunds did not occur until mid-April, weeks after the TRO was in place. American Girl also provided a declaration from a customer in New York who attested to purchasing

two dolls that she believed were authentic American Girl dolls through a

Zembrka website on March 22, 2021. The PayPal evidence also showed 700

hundred purchases by New York customers for other Zembrka products over the

past year, totaling $41,369.72.

The District Court denied the motion for reconsideration. *Am. Girl, LLC v.

Zembrka*, No. 1:21-CV-02372 (MKV), 2023 WL 4187377, at *6 (S.D.N.Y. June 26,

2023) (hereinafter "*Zembrka II*"). The District Court again concluded that because

no products actually shipped to New York and the customer payments were

refunded, no business transaction occurred as was required to establish personal

jurisdiction under § 302(a)(1). *Id.* at *4-5.[3] American Girl timely appealed both

the denial of the initial motion to dismiss and the motion for reconsideration.

During the course of oral argument before this Court, the following

exchange occurred:

**The Court:** [Y]our company does business in New York, is that not right?

**Zembrka's Counsel:** Does business online . . . .

**The Court:** Your client sells merchandise to people in New York?

**Zembrka's Counsel:** Yes . . . .

---

[3] The district court also concluded that § 302(a)(3) was not satisfied because American Girl did not demonstrate that Defendants delivered any of the allegedly infringing products to New York. *Zembrka II* at *5-6.

**The Court:** But you're doing business in New York?

**Zembrka's Counsel:** Yes, through [the] internet. There are sales record[s].

*See* Tr. 17:32-18:13.[4]

## STANDARD OF REVIEW

We review dismissal for lack of personal jurisdiction *de novo*, "construing all pleadings and affidavits in the light most favorable to the plaintiff and resolving all doubts in the plaintiff's favor." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists over the defendant. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). This "showing 'must include an averment of facts that, if credited by the ultimate trier of fact,'" would be sufficient for establishing jurisdiction over the defendant, and any factual findings regarding personal jurisdiction are reviewed for clear error. *Id.* (citations omitted). In deciding a motion to dismiss a complaint for lack of personal jurisdiction, the district court

---

[4] Zembrka's counsel appeared only to concede that Zembrka generally sells products to people in New York, not that Zembrka had sold to people in New York the counterfeit products at issue in this case.

may consider materials outside the pleadings, including "affidavits and other written materials." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).

## DISCUSSION

### A. Section 302(a)(1) of New York's Long-Arm Statute Establishes Personal Jurisdiction Over Zembrka

On this appeal, the primary issue is whether American Girl sufficiently established that Zembrka transacted business in New York for purposes of § 302(1)(a). We have little difficulty concluding that American Girl has met this burden.

Section 302 "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)).

For § 302(a)(1), the "jurisdictional inquiry is twofold: under the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the

transactions." *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 (2016).  Transacting business under § 302(a)(1) means "purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 639 (2d Cir. 2023) (quotation marks omitted).  Indeed, "the overriding criterion necessary to establish a transaction of business within the meaning of CPLR 302(a)(1)" is that "a non-domiciliary must commit an act by which it purposefully avails itself of the privilege of conducting activities within New York."  *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014) (cleaned up); *see also id.* at 378 ("[I]t is not the quantity but the quality of the contacts that matters under our long-arm jurisdiction analysis.").

The evidence put forth by American Girl, as well as the representations by Zembrka's counsel before this Court, convince us that Zembrka, indeed, purposefully availed itself of the privilege of conducting activities within New York and, thus, transacted business.  American Girl plausibly contended that a Zembrka customer had successfully placed orders on Defendants' website for counterfeit products to be shipped to New York.  This customer received email confirmation from Zembrka—emails that included the customer's New York

shipping address—stating "Order confirmed" and "We're getting your order ready to be dispatched. We will notify you when it has been shipped." J. App'x 83-84, 87-88, 318-19, 323-24. In addition, American Girl submitted emails from PayPal to the New York customer containing receipts for the counterfeit products with shipping addresses in New York. *Id.* at 85-86, 89-90.

The evidence demonstrates that Zembrka accepted orders with New York shipping addresses, sent confirmatory emails with New York shipping addresses containing commitments to ship to those New York addresses, and accepted payments from a customer with a New York address. We have little difficulty concluding that this activity constitutes transacting business within New York for purposes of jurisdiction under § 302(a)(1).[5]

The fact that Zembrka cancelled the orders and refunded the purchase price to the customer does not change this conclusion. Zembrka breached their commitment to sell and ship apparently only after they received notice of this

---

[5] We need not rely on American Girl's additional submissions with its motion for reconsideration to reach this conclusion, but that evidence reinforces that Zembrka should not have been dismissed. This evidence included records from PayPal showing that 38 additional New York customers ordered allegedly counterfeit products through Defendants' websites in March 2021, totaling $3,985.71. Additionally, the PayPal records showed 700 hundred purchases by New York customers for other products from Defendants over the past year, totaling $41,369.72.

litigation.[6] Section 302(a)(1) doesn't require a completed sale. It only requires a transaction.

Defendants contend that they did no more than operate interactive websites that were accessible from New York. But the law is clear that "long-arm jurisdiction is appropriately exercised over commercial actors who have . . . used electronic . . . means to project themselves into New York to conduct business transactions." *State v. Vayu, Inc.*, 39 N.Y.3d 330, 334 (2023) (cleaned up). That is precisely what Zembrka did. We have recognized that "a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1) . . . insofar as it helps to decide whether the defendant transacts any business in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir.

---

[6] During oral argument, Defendants' attorney directed our attention to a declaration submitted by Jason M. Drangel in support of American Girl, in which Drangel had averred that "the *vast majority* of the Relevant New York Customers were not refunded by Defendants until mid-April (i.e., well after the TRO was entered and Defendants retained counsel)." J. App'x 386 (emphasis added); Tr. 12:32-14:50. Relying on Drangel's use of "vast majority," as opposed to "all," Defendants' counsel argued that this litigation was not the reason for Defendants' decision to cancel the orders. This argument is unpersuasive. In reviewing a district court's dismissal for lack of personal jurisdiction, "we construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008). To draw the inference proposed by Defendants would require us to improperly construe the record in the light most favorable to Defendants.

2007) (internal quotation marks omitted).  The District Court erred in characterizing Defendants' websites as merely "accessible" from New York. *Zembrka I*, 2021 WL 1699928, at *6.  As noted above, American Girl provided evidence that a prospective customer in New York could submit an order and payment information through Zembrka's websites that, in turn, triggered an order confirmation email from Defendants and payment receipts from PayPal.  Accordingly, Defendants' websites can readily be characterized as "highly interactive." *Chloe*, 616 F.3d at 170. Defendants' operation of these websites is therefore another contact that contributes to their purposeful availment of New York.

The District Court concluded that Zembrka had not transacted business under § 302(a)(1) because there was no evidence that they actually shipped ordered and paid-for goods to New York.  This conclusion was incorrect.  Section 302(a)(1) does not require a shipment. It requires a transaction.  As noted earlier, the "overriding criterion" is whether the non-domiciliary defendant "purposefully avails itself of the privilege of conducting activities within New York." *Paterno*, 24 N.Y.3d at 377 (quotation marks and brackets omitted).  That activity may or may not include shipping goods.

In reaching its conclusion, the District Court relied on our decision in *Chloe*, interpreting the references to the "shipment" of a counterfeit bag to mean that shipment was an essential component of transacting business for purposes of § 302(a)(1). *Zembrka II*, 2023 WL 4187377, at *4-5; *Zembrka I*, 2021 WL 1699928, at *4-5; *see Chloe*, 616 F.3d at 165-70. But *Chloe* did not reach that conclusion. Our holding in *Chloe* did not depend on the shipment of goods, but rather on the fact that a single act can potentially suffice for establishing personal jurisdiction under § 302(a)(1), depending on the defendant's other activity directed towards New York. *Id.* at 170. Neither *Chloe* nor any of our other cases should be read as indicating that shipment is required to demonstrate a business transaction for § 302(a)(1) purposes.

In sum, we conclude that the evidence put forth by American Girl sufficiently demonstrates that Zembrka's conduct satisfied the first § 302(a)(1) requirement —that Zembrka "conducted sufficient activities to have transacted business in the state." *Al Rushaid*, 28 N.Y.3d at 323. We also have little difficulty concluding that American Girl has adequately satisfied the second requirement that "the claims must arise from the transactions." *Id.* American Girl's claims are based on the advertisement, marketing, and sale of allegedly infringing

merchandise, and American Girl has provided evidence that New York customers submitted orders and payments for this merchandise through Defendants' websites and received order confirmations from them. This alleged conduct satisfies the "relatively permissive inquiry . . . that at least one element of the claim arises from defendant's New York contacts." *Spetner*, 70 F.4th at 643 (cleaned up). Accordingly, American Girl has met its burden of establishing personal jurisdiction over Zembrka under § 302(a)(1).[7]

**B. Due Process**

Having concluded that New York's long-arm statute applies, we now must consider whether exercising personal jurisdiction over Zembrka comports with the due process protections afforded by the Constitution. *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015). "This inquiry usually proceeds in two steps—an analysis of whether each defendant has minimum contacts with the forum state, and an analysis of whether exercising jurisdiction would comport with fair play and substantial justice." *In re Platinum & Palladium Antitrust Litig.*,

---

[7] We also observe that in this case the defendants had not blocked New York residents' access to their websites. Moreover, because we have already concluded that American Girl sufficiently established jurisdiction under § 302(a)(1), we need not address whether § 302(a)(3) provided an additional basis for the District Court to exercise jurisdiction.

61 F.4th 242, 269 (2d Cir. 2023) (internal quotation marks and citation omitted

omitted), *cert. denied sub nom. BASF Metals Ltd. v. KPFF Inv., Inc.*, 144 S. Ct. 681

(2024).

When, as here, specific jurisdiction is asserted, the "minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 122 (2d. Cir. 2021) (quotation marks and citation omitted). For the same reasons that Zembrka's engagement with New York satisfies § 302(a)(1), it also satisfies the minimum contacts requirement. *See Chloe*, 616 F.3d at 171 (concluding that the "assertion of personal jurisdiction" over the defendant "comports with due process for the same reasons that it satisfies New York's long-arm statute").

As to the second consideration, the inquiry for whether exercising jurisdiction comports with fair play and substantial justice relies on five factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*In re Platinum*, 61 F.4th at 273 (citation omitted). "The import of the 'reasonableness' inquiry varies inversely with the strength of the 'minimum contacts' showing—a strong (or weak) showing by the plaintiff on 'minimum contacts' reduces (or increases) the weight given to 'reasonableness.'" *Id.* (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002)). Here, we not only find that the "minimum contacts" showing is quite strong, but also that Defendants have failed to convincingly demonstrate that the exercise of jurisdiction would be unreasonable.

We do not doubt that, as Zembrka argues, the burden on them will be significant, as they reside and are based in China. However, Zembrka ran the risk of being haled into court by offering for sale allegedly counterfeit items for which New York customers could order and pay. Moreover, New York has an exceptionally strong interest in protecting consumers and businesses in this state from the flow of counterfeit goods from abroad. That interest, we conclude, trumps the potential inconvenience of requiring foreigners to litigate in the courts of this State. Furthermore, Zembrka has not demonstrated that China would provide an appropriate forum for this litigation. None of the other

reasons Zembrka has put forth convince us that it would be unreasonable for a court in New York to exercise jurisdiction.

## CONCLUSION

For the reasons set forth above, we **REVERSE** the district court's order dismissing the complaint for lack of personal jurisdiction and **REMAND** for further proceedings consistent with this opinion.